# IN THE SUPREME COURT OF CALIFORNIA

In re D.N., a Person Coming Under the Juvenile Court Law.

---

THE PEOPLE,
Plaintiff and Respondent,
v.
D.N.,
Defendant and Appellant.

S268437

Fifth Appellate District
F080624

Fresno County Superior Court
19CEJ600384-1

---

December 12, 2022

Chief Justice Cantil-Sakauye authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Jenkins, and Guerrero concurred.

In re D.N.

S268437


Opinion of the Court by Cantil-Sakauye, C. J.


After determining that D.N., a minor, was within the jurisdiction of the juvenile court because of his violation of criminal laws (Welf. & Inst. Code, § 602),[1] the court adjudged D.N. (hereafter minor) to be a ward of the court and ordered him to reside in his parent or guardian's home under several conditions of probation. The court further ordered: "Probation is authorized to offer the minor up to 50 hours of community service, or up to a cumulative total of 10 days on the community service work program as an option to work off alleged probation violations."

On appeal, minor attacks this provision of the court's dispositional order as a constitutionally improper delegation of judicial authority to the probation department and as a deprivation of due process. Both challenges rest on the premise that the court's order allowed the probation department itself to determine that the minor had violated his probation and to impose community service as a sanction for the violation. We reject that premise and the constitutional challenges based on it. The juvenile court did not authorize the probation officer to adjudicate violations or impose sanctions for them, but only to "offer" minor the "option" of performing community service when a violation is "alleged." In effect, the juvenile court gave

_____

[1]    All further unspecified statutory references are to the Welfare and Institutions Code.

1

its advance approval to an agreement that might be reached between minor and the probation officer for the performance of a certain amount of community service in lieu of having an alleged probation violation adjudicated in a judicial proceeding. The court's order did not thereby improperly delegate any part of the judicial function to the probation officer, nor did it deprive minor of any judicial process constitutionally due him. Under the challenged provision, minor remained free to reject any offer the probation department made and to invoke the ordinary statutory procedures for adjudication of an alleged probation violation.

## I. PROCEDURAL BACKGROUND

The People brought a juvenile wardship petition under section 602, subdivision (a), alleging minor had committed one count of violating Penal Code section 288.5 (continuous sexual abuse of a child under 14 years of age). The juvenile court found the allegation true after a contested jurisdictional hearing. At the hearing on disposition, the court adjudged minor a ward of the court and determined his maximum period of confinement was 16 years. In order that minor could enter a sex offender treatment program as soon as possible, however, the court declined to impose any initial period of confinement. Instead, the court placed minor on probation, ordered him to remain on G.P.S. supervision for at least three months, and imposed other conditions of probation including participation in a long-term sex offender program, school attendance, a curfew, a restitution fine, restrictions on his association with others, and search conditions.

In the portion of its disposition at issue here, the court orally ordered: "The Court is granting probation in this matter.

And the Court is authorizing the Probation Department [to] offer the minor community service, up to 50 hours of community service, up to a cumulative total of 10 days, to work off any alleged probation violations. That can also include the GPS system as a sanction, up to 30 days, but he'd already be on that program." The court continued: "I would anticipate if there's any significant violation of any term and condition of the grant of probation here, that he would be brought back to court for additional recommendations, which most likely would include [a] substantial amount of time in custody." The court's written dispositional order included the same provision for community service, though with some additional language, italicized below: "Probation is authorized to offer the minor up to 50 hours of community service, *or* up to a cumulative total of 10 days *on the community service work program as an option* to work off alleged probation violations. Minor to remain on GPS for 3 months." This provision appears to have been drawn from a standard order option on the juvenile court's delinquency minute order form (not selected by the court in this case), which reads: "The Court authorizes the Probation Department to offer the minor community service up to 50 hours as an option to work off alleged probation violations in lieu of being brought back before the court."

The Court of Appeal rejected minor's claims that the community service provision violated separation of powers principles and infringed his due process rights.[2] Citing *In re*

---

[2] The appellate court determined that because minor's challenge presented a pure question of law that could be resolved without reference to any disputed fact, the claim was

*Gabriel T.* (2016) 3 Cal.App.5th 952, 958, the appellate court acknowledged that a juvenile court may not delegate to a probation officer the authority to determine that a minor is in violation of probation. But in this case, the court held, the juvenile court's order did not permit the probation department "to decide if and when a violation of probation had occurred. . . . Instead, the court permitted the probation officer to offer appellant the option of community service for an alleged violation. The juvenile court set the basic condition, but it left the specific details to the probation officer and appellant to resolve." The Court of Appeal also rejected minor's challenges to several other probation conditions but struck an AIDS testing condition subject to presentation of additional evidence concerning its validity. In all other respects, the appellate court affirmed the dispositional order.

We will affirm the Court of Appeal's judgment.

## II. DISCUSSION

The challenge here is to a juvenile court order authorizing the probation officer to offer a minor on probation the option of performing community service, in an amount chosen by the probation officer up to a maximum set by the court, in the event the minor is alleged to have violated a term of probation. Minor contends this provision "not only permits the probation officer to unilaterally find appellant in violation of probation, but also to choose the appropriate sanction for any alleged violation." He maintains that the juvenile court's delegation of these assertedly judicial functions — adjudicating violations of

---

not forfeited by his failure to object in the juvenile court to this part of the order. The Attorney General does not dispute this holding.

4

probation and imposing sanctions for them — violates both due process and separation of powers principles.

Before addressing minor's arguments, we outline the roles of the court and the probation officer regarding juvenile offenders on probation supervision.

When a minor has been adjudged a ward of the juvenile court because of delinquency under section 602 and placed under the supervision of a probation officer, the court "may impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced." (§ 730, subd. (b).) A few basic conditions involving education and curfew are generally required, absent a finding of inappropriateness, of all wards who are not removed from their parent or guardian's physical custody (§ 729.2), while other conditions are specifically mandated or authorized under certain circumstances or for violations of certain criminal laws (see, e.g., §§ 729, 729.1, 729.3, 729.6, 729.8). Aside from those required conditions, the juvenile court retains significant flexibility to fashion its rehabilitative mandates and conditions. "The statutory scheme governing juvenile delinquency is designed to give the court 'maximum flexibility to craft suitable orders aimed at rehabilitating the particular ward before it.' " (*In re Greg F.* (2012) 55 Cal.4th 393, 411.)

After disposition, the juvenile court retains the authority to modify its orders regarding a minor under its jurisdiction (§ 775), and a parent, the minor through a guardian ad litem, or another person having an interest in the minor may petition the court for a modification (§ 778). The probation officer or public prosecutor may also seek a modification from the court. (§ 777,

subd. (a)(2).) A modification that involves removal of the minor from the custody of a parent, guardian, relative or friend and placement in foster care or commitment to confinement must be pursued by the notice and hearing procedures set out in section 777. At the hearing, the facts alleged in the notice must be proved by a preponderance of the evidence. (*Id.*, subd. (c).) If the probation officer proposes a modification that does not call for removal from parental custody or commitment to confinement, the officer may seek modification through a petition under section 778. (Cal. Rules of Court, rule 5.560(e)(1); *In re Glen J.* (1979) 97 Cal.App.3d 981, 984–986.)

Under California's general municipal law, a county's chief probation officer is appointed by the judges of the superior court, and the charter of Fresno County, where this case arises, is to the same effect. (§ 270; Gov. Code, § 27770; Fresno County Charter (as amended June 5, 2018), § 21.) The probation officer's duties include "[c]ommunity supervision of offenders subject to the jurisdiction of the juvenile court pursuant to [Welfare & Institutions Code] Section 602" (Gov. Code, § 27771, subd. (a)(1)), and in performing that function the probation officer plays a dual role, serving as both an arm of the juvenile court and, in some circumstances, as an aide to law enforcement. (See *In re Arron C.* (1997) 59 Cal.App.4th 1365, 1372 [considering juvenile probation department to be "effectively an arm of the juvenile court"]; *id.* at pp. 1377–1378 (conc. & dis. opn. of Jones, J.) [emphasizing probation officer's status as a limited-powers peace officer].) On the one hand, the probation officer qualifies as a peace officer for purposes of enforcing compliance with the conditions of probation. (Pen. Code, § 830.5, subd. (a)(1).) On the other, the probation department aids the juvenile court by "furnish[ing] to the court such

information and assistance as the court may require" (Welf. and Inst. Code, § 280), including a social study and recommended disposition (*ibid.*), which the court must read and consider (§ 706). And as noted, the probation officer supervises offenders subject to the court's jurisdiction and may, in the course of that supervision, petition the court to address violations of a probationer's conditions by ordering a more restrictive disposition (§ 777, subd. (a)(2)) or another form of modification (§ 778).

In light of the probation officer's close links to the juvenile court, and the impracticality of juvenile courts themselves supervising juvenile probationers on a day-to-day basis, California courts have recognized that a juvenile court may place significant supervisory discretion in the probation department's hands, at least when the department's decisions are subject to judicial review. (See, e.g., *In re I.M.* (2020) 53 Cal.App.5th 929, 933–936 [no improper delegation when length of detention depends on minor's completion of rehabilitative program supervised by probation department, but court retains ultimate authority to determine whether minor has completed program and to release minor from detention]; *In re J.C.* (2019) 33 Cal.App.5th 741, 747–748 [same: noting that the minor can bring any issue of unfair delay in certification of rehabilitative progress to the court's attention through a petition under section 778]; *In re Robert M.* (2013) 215 Cal.App.4th 1178, 1185 [noting that ward in rehabilitative program "is answerable on a daily basis to those who operate the program, but that does not change the ultimate responsibility of the juvenile court for the ward's supervision and control"].)

In the related context of dependency proceedings,[3] courts considering orders for visitation have permitted a similar degree of delegation to public officers, or even private actors, so long as the juvenile court retains ultimate control. In *In re Chantal S.* (1996) 13 Cal.4th 196, 213, the juvenile court ordered that the dependent child's father could have visits with the child, but visitation would not begin until "father's chosen therapist determined father had made 'satisfactory progress for a time.' " We upheld the order, which we explained "does not vest therapists with 'absolute' discretion to determine whether visitation should occur." (*Ibid.*) We noted that any parties who believed themselves prejudiced by the therapist's decision "would be permitted to raise those claims in the family court, and a family court judge would make the final decision as to whether visitation should begin." (*Id.* at p. 214; see *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374 ["the juvenile court may delegate to the probation officer or social worker the responsibility to manage the details of visitation, including time, place and manner thereof"]; *In re Jennifer G.* (1990) 221 Cal.App.3d 752, 757 [court may delegate "the ministerial tasks of overseeing the [visitation] right as defined by the court"]; see also *In re James R.* (2007) 153 Cal.App.4th 413, 435–438 [surveying dependency case law on this point].) As one Court of Appeal explained, "The nature of the task of the juvenile court system in responding to the rapidly changing and complex family situations which arise in dependency proceedings and the interests of judicial economy require the

---

[3] A dependency proceeding is one brought pursuant to section 300, generally because of abuse or neglect by a parent or guardian.

delegation of some quasi-adjudicatory powers to a member of the executive branch dedicated to the dependent child's welfare. As long as that role is limited and subject to supervision, as it was here, there is no violation of the separation of powers doctrine." (*In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1237.)

In contrast, courts have found an improper delegation when the juvenile court has given nonjudicial persons or institutions complete discretion over a significant aspect of the court's legal control of the minor. In *In re Gabriel T.*, *supra*, 3 Cal.App.5th at page 958, the juvenile court had committed the minor to a correctional academy for 12 months, the last six to be in "aftercare under the supervision of the probation officer," and had added that "[a]t any time during the aftercare component you may be returned to the Correctional Camp for a one-time remediation of 30 days due to a violation of probation or program rules." The Court of Appeal held the last provision violated the statutes defining the procedures for finding a probation violation: "Here, the condition imposed upon appellant vested absolute discretion in the probation officer to determine if and when a violation of probation occurred during the aftercare program." (*Id.* at p. 960.) The court further noted that, in contravention of the statutory framework, the challenged condition failed to "require a judicial finding that appellant violated a condition of probation or that his continuance in the home was contrary to his welfare" and that the order did not guarantee the minor "notice or an opportunity to be heard" before being sanctioned for a violation. (*Id.* at pp. 960–961; see also *In re Jennifer G.*, *supra*, 221 Cal.App.3d at p. 757 [holding dependency orders giving county agency the power to determine the right to and frequency of visitation were improper delegations of the judicial function]; *In re Pedro Q.* (1989)

209 Cal.App.3d 1368, 1371–1372 [condition restricting the minor's travel improperly imposed by the probation officer without judicial approval]; *In re Danielle W., supra,* 207 Cal.App.3d at p. 1237 ["a visitation order granting the Department [of Children's Services] *complete* and *total discretion* to determine whether or not visitation occurs would be invalid"]; cf. *In re Sheena K.* (2007) 40 Cal.4th 875, 889 [probation condition forbidding a minor from associating with " 'anyone disapproved of by probation' " is impermissibly vague in absence of requirement that the minor know of probation's disapproval]; *id.* at pp. 889–892.)[4]

---

[4]     In the context of adult felony probation, as well, courts have disapproved provisions purporting to completely delegate the setting of a condition to the probation department. (See, e.g., *People v. Smith* (2022) 79 Cal.App.5th 897, 901–903 [order delegating to probation department decision whether probationer was to attend a residential drug treatment program, as opposed to an outpatient program, violated separation of powers doctrine]; *People v. Cruz* (2011) 197 Cal.App.4th 1306, 1311 [statute giving probation department sole discretion to require G.P.S. monitoring violates the separation of powers]; *People v. O'Neil* (2008) 165 Cal.App.4th 1351, 1358–1359 [striking stay-away order for delegating to probation department all specification of persons to be avoided: "The court may leave to the discretion of the probation officer the specification of the many details that invariably are necessary to implement the terms of probation. However, the court's order cannot be entirely open-ended"]; *People v. Cervantes* (1984) 154 Cal.App.3d 353, 356–361 [striking order giving probation department power to set amount of restitution]; but see *People v. Penoli* (1996) 46 Cal.App.4th 298, 307–308 [no improper delegation in order permitting probation department to select a particular residential drug rehabilitation program].)

Minor contends that the order here falls on the impermissible side of the line — violating both separation of powers and due process — because it gives the probation officer the power to determine whether minor has violated his probation and to impose community service as a sanction. The order, minor argues, went well beyond those endorsed in the case law: "[T]he juvenile court delegated to the probation officer not simply the specific details of a particular probation condition, but rather the authority to determine whether conditions of probation had been violated, as well as the authority to impose sanctions for such violations without the necessity of a court hearing or due process."

If the provision minor challenges did what he says it does — if it permitted the probation officer to find a violation of probation and impose a sanction without minor having notice, an opportunity to be heard, or any form of judicial process — it would raise constitutional concerns of the type minor posits. But as we read it, the juvenile court's order did not delegate any such judicial power to the probation officer. Instead, as the Court of Appeal below explained, the juvenile court merely "permitted the probation officer to offer appellant the option of community service for an alleged violation." When the contested provision of the juvenile court's order is read together with the court's caution that minor would be returned to court for "any significant violation" of his probation and would face the probability of "substantial amount of time in custody" (impliedly invoking section 777), it is clear the provision does no more than authorize the probation officer to reach a consensual arrangement with minor for performance of community service as a means of addressing allegations of relatively insignificant,

technical violations of probation.[5]  Under that grant of authority, if minor wishes to contest an allegation that he has violated his probation or the probation officer's determination that community service hours are warranted, he is free to decline the offer.  As the Attorney General explains, the probation department would then be free to decide whether the alleged violation warrants seeking a modification of the juvenile court's probation order under section 777, or under section 778 if no more restrictive disposition were sought.

Minor disputes this reading of the order's provision, maintaining that "[a]side from the single word 'offer,' the plain language of the court's order contains no mention or hint of a consensual arrangement." We cannot agree.  Even by itself, the word "offer" clearly indicates the contemplated arrangement was a consensual one, as an offer by its nature may be accepted or declined.[6]  But beyond that, the juvenile court's order refers to community service as an "option" for minor. Again, an option necessarily involves a choice[7] — in this context, minor's choice

---

[5]  As the Attorney General suggests, these might include a violation of curfew, a failure to report to the probation officer, or an absence from school.  For alleged low-level violations such as these, the probation officer was authorized to offer minor an appropriately limited sanction, up to 50 hours of community service.  We do not address in this case the validity of a probation order that would authorize a probation officer to offer more serious sanctions, such as time in custody, presumably for correspondingly more significant violations of probation.

[6]  See Random House Unabridged Dictionary (2nd ed., 1993), page 1344 (defining "offer" as "1. to present for acceptance or rejection; proffer").

[7]  See Random House Unabridged Dictionary, *supra*, at page 1360 (defining "option" as "1.  The power or right of choosing. 2.  Something that may be or is chosen; choice").

between agreeing to perform a certain number of hours of community service, or not agreeing and facing potential modification of his probation through judicial process.[8]

In contrast, minor's own interpretation of the juvenile court's order — as an authorization for the probation department to unilaterally adjudicate and sanction violations of probation — is inconsistent with the order's actual language. It does not account for the court's references to the probation department "offer[ing]" minor community service as an "option." Nor does it fit with the reference to "alleged" violations (as opposed to violations *found* to have been committed). In effect, minor reads the court's order as saying: "Probation is authorized to mandate the minor perform up to 50 hours of community service, or up to a cumulative total of 10 days on the community service work program to work off probation violations found to have been committed." But the order's actual language cannot support that reading.

"A probation condition should be given " 'the meaning that would appear to a reasonable, objective reader.' " (*People v.*

---

[8]    That this is the nature of the choice is made especially clear in the standard, preprinted form of this provision, which specifies that community service would be "in lieu of being brought back before the court."

The juvenile court did not say on the record why it did not use the preprinted provision. It may have been because that preprinted form did not include the specification that the up-to-50 hours of community service could be served as "up to a cumulative total of 10 days on the community service work program," language ultimately included in the court's order and (in a slightly different form) in a provision — checked as accepted by the court — on the recommendation form submitted by the probation department.

*Olguin* (2008) 45 Cal.4th 375, 382.)  Following that precept, we read the challenged provision here *not* as delegating adjudicatory powers to the probation officer but as indicating the court's advance approval of an agreement that the probation officer might reach with minor — and that minor has the power to decline — to settle allegations of probation violations, in lieu of a petition to the court for modification under sections 777 or 778.  So understood, the provision neither delegates any essentially judicial function to the probation department nor deprives minor of due process.

We consider the separation of powers question first.  "The powers of state government are legislative, executive, and judicial.  Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution."  (Cal. Const., art. III, § 3.)  Although the separation of powers doctrine "does not prohibit one branch from taking action that might affect another, the doctrine is violated when the actions of one branch defeat or materially impair the inherent functions of another."  (*Steen v. Appellate Division of Superior Court* (2014) 59 Cal.4th 1045, 1053.)  "Separation of powers does not mean an entire or complete separation of powers or functions, which would be impracticable, if not impossible."  (*In re Danielle W.*, *supra*, 207 Cal.App.3d at p. 1236.)

The challenged provision takes effect when the probation department makes an allegation that the minor has violated his or her probation.  This function — assessing a delinquent minor's performance on probation and reaching conclusions about probable violations — is squarely within the ordinary statutory role of the probation department.  If, in the course of supervising a juvenile probationer, the probation officer

observes or learns of an apparent probation violation, the officer may petition the court for a modification of its order, "alleg[ing]" the violation in the petition. (§ 777, subd. (a)(2); see also § 778 [petition for modification not involving more restrictive disposition].) In this respect, the juvenile court's order made no delegation of judicial authority; *alleging* a violation is a function statutorily belonging to the probation department (and the prosecuting attorney (see § 777, subd. (a)(2))), not to the court.

Moreover, when an alleged violation of criminal law or probation conditions is deemed insufficiently serious to warrant a delinquency proceeding under section 602 or a proceeding for modification under section 777, the statutes assign to the probation officer the duty to fashion an appropriate course of action. When a petition under section 777 is dismissed on motion of the prosecuting attorney, the matter may be "referred to the probation officer for whatever action the prosecuting or probation officer may deem appropriate." (*Id.*, subd. (a)(3).) More analogous to the present order is the diversion program established by section 654. This statute authorizes the probation officer, "after investigation of an application for a petition or any other investigation the probation officer is authorized to make" and in lieu of asking the prosecuting attorney to file a section 602 petition, "with consent of the minor and the minor's parent or guardian, [to] refer the minor to services provided by a health agency, community-based organization, local educational agency, an appropriate non-law-enforcement agency, or the probation department." (§ 654, subd. (a); see *Charles S. v. Superior Court* (1982) 32 Cal.3d 741, 746–747 [explaining roles of probation department and court under § 654].)

To be sure, the challenged provision here did not invoke a statutory diversion program such as section 654's, and did not include the procedural detail of such a statutory program.[9] We nonetheless agree with the Attorney General that the provision here "functions in the spirit of diversion and informal probation." Like a program of informal probation under section 654, a juvenile court's authorization for informal resolution of less significant violation allegations, without the court's renewed involvement, serves to keep minor probationers in compliance with their rehabilitative program, consistent with the rehabilitative purposes of the juvenile delinquency system (*In re Greg F., supra,* 55 Cal.4th at p. 411) and the probation officer's statutory role. And like a section 654 diversion, it was intended for situations where "all can agree to a program of rehabilitation." (*Charles S. v. Superior Court, supra,* 32 Cal.3d at p. 749.) Insofar as the present order authorized the probation department, in its role of supervising a minor's rehabilitative program, to offer minor community service for alleged violations in lieu of pursuing a judicial proceeding, it invoked a type of power that was already within the probation department's core function, and in that respect involved no delegation of any uniquely judicial authority.

---

[9]     Diversion statutes like section 654 include a requirement of parental concurrence to ensure that the minor's choice to accept diversion is made knowingly and voluntarily. (See § 654, subd. (a).) As a policy matter, a parental-consent requirement or similar safeguard might be appropriate in this context, too, to ensure the minor's effective consent to the probation officer's proposed sanction. Whether such a requirement is necessary, however, is beyond the scope of the issues presented and briefed here.

Under the challenged provision, the probation department also was empowered to decide how many hours of community service to offer minor, up to the maximum set by the court. We conclude that the court's delegation to the probation department of the number of hours to offer lay within constitutional limits. Having determined that community service would be an appropriate response to a relatively technical or insignificant probation violation by minor, and that 50 hours was the most that minor might appropriately serve for such a violation, it did not violate the separation of powers doctrine for the juvenile court to assign the probation department to fix — with minor's agreement — the precise number of hours appropriate to the alleged violation. (See *In re Chantal S.*, *supra*, 13 Cal.4th at pp. 213–214 [approving visitation order in dependency case that left open exactly when visits could begin]; *In re I.M.*, *supra*, 53 Cal.App.5th at pp. 933–936 [delinquency court may delegate to probation department, in first instance, supervision of minor's completion of rehabilitative program]; *In re Moriah T.*, *supra*, 23 Cal.App.4th at p. 1374 [delegation of "time, place and manner" of visitation permitted].) The court's order here gave the probation department a very limited discretionary power: to set the details of a community service program that would be agreed upon with minor in lieu of filing a formal petition in juvenile court alleging probation violations. Even viewed as a delegation of a judicial function, this limited delegation of discretion is not comparable to a statute giving the probation department complete authority to decide whether to impose a particular condition of probation (*People v. Cruz*, *supra*, 197 Cal.App.4th at p. 1311), or a juvenile court's attempted delegation of the authority to return a minor to confinement without any judicial determination of violation (*In re Gabriel T.,*

*supra*, 3 Cal.App.5th at pp. 958–961). We stress, again, that under the challenged provision participation in community service was merely an option that the probation officer could offer to minor. Minor was free to refuse the offer, and potentially return to juvenile court, if he believed the probation department was proposing an inappropriate level of community service for the alleged violation of probation (or, for that matter, if he contested the allegation itself).

Because community service was, under the challenged provision, to be performed only with minor's agreement, we also find no deprivation of due process here despite the lack of judicial procedure. When a minor is accused of violating a criminal law (§ 602) or the terms of probation (§ 777), due process requires that the minor receive notice of the allegations and that the burden be on the People to prove the violation, though the constitutionally mandated standard of proof differs in these two circumstances: beyond a reasonable doubt for allegations of criminal violations, and preponderance of the evidence for allegations the minor has violated the terms of probation. (*In re Eddie M.* (2003) 31 Cal.4th 480, 503–508; *In re Arthur N.* (1976) 16 Cal.3d 226, 234–235.) A juvenile court order that permitted the probation officer to make a finding of a probation violation and impose a sanction for the violation without providing the minor notice or an opportunity to be heard, and without a requirement that the People prove the violation by a preponderance of the evidence would, at the least, raise serious due process questions. But no such issues are present here; the probation department was authorized only to offer minor community service as an option, in lieu of returning to court, to clear alleged violations of his probation. The challenged provision deprived minor of no judicial process he

would otherwise receive; it merely authorized providing him with another option for resolving allegations of probation violations that, in practice, are likely to be relatively insignificant. If he declined that option, the ordinary procedures under sections 777 or 778 would come into play: The probation officer would be required to give formal notice, and judicial proceedings for modification of probation would commence. (See § 777, subds. (a), (c); § 778, subd. (a).) Minor raises no claim of constitutional insufficiency against those statutory provisions for notice and hearing.

The record is unclear concerning whether the juvenile court intended to authorize probation to offer additional G.P.S. monitoring, as well as community service, as an option to clear an alleged violation. To the extent it did, however, there is no indication that the terms of that provision were any different from the community service provision — that is, an offer that the minor could accept or reject. Our constitutional analysis of the G.P.S. monitoring would therefore be the same.

In conclusion, the challenged provision of the juvenile court's probation order merely authorized the probation department to offer minor a community service option for nonjudicial resolution of alleged probation violations. In authorizing an option for informal resolution of such allegations, the court neither delegated judicial functions in an improper manner to the probation officer nor deprived minor of any judicial process due him.

## III.  DISPOSITION

The judgment of the Court of Appeal is affirmed.


**CANTIL-SAKAUYE, C. J.**


**We Concur**:

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**
**GUERRERO, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  In re D.N.

_____

**<u>Procedural Posture</u>** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)**
**Review Granted (unpublished)** XX NP opn. filed 3/23/21 – 5th Dist.
**Rehearing Granted**

_____

**Opinion No.** S268437
**Date Filed:** December 12, 2022

_____

**Court:** Superior
**County:** Fresno
**Judge:** Gary D. Hoff

_____

**Counsel:**

Elizabeth Campbell, under appointment by the Supreme Court, and Sangeeta Sinha, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, Rachelle A. Newcomb and Kari Ricci Mueller, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Elizabeth Campbell
Attorney at Law
3104 O Street
PMB 334
Sacramento, CA 95816
(530) 786-4108

Kari Ricci Mueller
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA 94244
(916) 210-7731